

**Entered on Docket**
**October 28, 2011**

*Bruce A. Markell*
_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | |
|---|---|
| In re: ) | Case No.: BK-S-11-16383-BAM |
| ) | |
| JESSIE LYNNE SMITH, ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | Date:       June 6, 2011 |
| ) | Time:       2:30 p.m. |
| ) | Courtroom:  3 |
| _____ ) | |

**OPINION SANCTIONING GWYNNE R. DUMBRIGUE[1]**

BRUCE A. MARKELL, Bankruptcy Judge:

I.  FACTS

*A.  The Marsh Case*

The court first became aware of attorney Gwynne R. Dumbrigue's ("Dumbrigue") failings through a letter sent to the court by one of his clients. Milissa Michelle Marsh ("Marsh"), a bankruptcy debtor in another chapter 7 case,[2] wrote to the court and relayed certain deficiencies in

---

[1]To the extent that this case has been administratively closed, it is hereby reopened for the purpose of filing this opinion.

[2]The related case is *In re Milissa Michelle Marsh*, Case No.: BK-S-08-18664-BAM, and will be referred to as the Marsh case for purposes of this opinion. As will be clear by the conclusion of this opinion, Dumbrigue's failings in the Marsh case are intimately related to his failings in this case, and the court, therefore, recounts Dumbrigue's conduct in that case in detail.

Unless specified otherwise, all Chapter and Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All Local Rule references are to the Local Rules of Practice of the United States District

the representation provided by Dumbrigue.  On February 10, 2009, Marsh's bankruptcy case had been closed without discharge because the required form regarding completion of a post-petition personal financial management course was never filed.  In her letter to the court, Marsh alleged that this failing was Dumbrigue's alone.  Marsh claimed that before the clerk closed her case without issuing a discharge, she had completed the required class and given the required documentation to Dumbrigue to file with the court.  Despite Marsh's repeated requests, Dumbrigue failed to file the certificate as required.  Once Marsh learned that her case was closed without discharge, she contacted Dumbrigue again.  Dumbrigue assured Marsh that he would resolve the issue.  She went on with her life assuming that Dumbrigue had done what he said he would and that she had received her discharge.

When Marsh began receiving collection letters for debts she thought had been discharged, she suspected Dumbrigue had failed to file the certificate as he was supposed to.  In the spring of 2010, she repeatedly attempted to contact Dumbrigue.  She finally received a voice mail from him, stating that he was working on the matter and would resolve it within a week.  Like all of Dumbrigue's previous representations to Marsh, this proved untrue.  No action had been taken in Marsh's case since February 2009, when it was closed without discharge.  Worse, it was not until Marsh contacted the bankruptcy court the end of July 2010 that she discovered this fact.

Confronted with continued and purposeful deception by her attorney, Marsh contacted the court directly.  In an email which the court ordered placed on the docket in her case, she detailed Dumbrigue's failings and requested relief.  In response, the court set a hearing for September 9, 2010 to determine whether Dumbrigue should be ordered to disgorge the fees he received from Marsh pursuant to Section 329(b).  Marsh appeared on her own behalf.  Dumbrigue failed to appear.  After listening to Marsh's account of Dumbrigue's conduct, the court determined that the services

Court, District of Nevada, as presently in effect.

2

rendered by Dumbrigue to Marsh were so utterly inadequate that they were of no value to Marsh, as Dumbrigue's actions had deprived Marsh of the central benefit of her chapter 7 bankruptcy, and had unnecessarily exposed her to dunning creditors.  The court ordered Dumbrigue to disgorge all fees Marsh paid him by October 7, 2010 and to file proof of compliance by October 14, 2010.[3]  The court explicitly placed Dumbrigue on notice that failure to timely file the required proof of compliance could result in a finding that Dumbrigue was in contempt of court and could lead to further sanctions against him.

**1. Dumbrigue Fails to Comply with the Order to Disgorge Fees**

Dumbrigue failed to file the required proof of compliance by October 14.  The court ordered him to appear and show cause why he should not be held in contempt of court.  Dumbrigue responded to the court's order, admitting that he had failed to repay Marsh.  He alleged that he was unable to comply with the order because he lacked the funds to do so.  He claimed he was waiting for family members from overseas to wire money to him, which finally occurred on the afternoon of November 5, 2010.  Dumbrigue further alleged that he would comply with the court's order by the time the court held the hearing on its order to show cause.

The court held the hearing on November 8, 2010.  At the hearing, the court determined that Dumbrigue had in fact tendered repayment of all funds to Marsh via cashier's check.  After considering all of the relevant factors then known, the court found that Dumbrigue had failed to properly manage his time and his practice.  The court ordered him to complete a total of six hours of continuing legal education ("CLE") classes, of which at least half were to have time management or case management as their subject.  The November 12, 2010 order specified that the classes were to be taken in an in-person, classroom setting and set a March 31, 2011 deadline for Dumbrigue to file

---

[3]The court reopened the Marsh case in a separate order, and Marsh herself filed the required proof of completion of the post-petition course on personal financial management soon thereafter. Marsh received her bankruptcy discharge approximately one week after she filed the required form.

proof of completion.  The required proof of completion was to consist of: (1) a declaration detailing the subject, time, instructor, and number of credits earned for each of the classes taken; and (2) evidence of completion in the form of a certificate of completion signed by the course instructor or an attendance sign-off signed by the course instructor.

Because of Dumbrigue's history of failing to comply with court orders, the court also provided that additional sanctions would be immediately implemented if Dumbrigue failed to comply with any of the above requirements.  Specifically, the order provided that if Dumbrigue failed to complete the required classes or to timely or properly file the required proof of completion, the court would immediately enter an order barring Dumbrigue from filing new bankruptcy cases in the United States Bankruptcy Court, District of Nevada.  This suspension was to last until such time as he had complied with the court's order and for such additional time as the court deemed a proper sanction for his continued and repeated disregard of court orders.

### 2.  Dumbrigue does not Complete the Required CLE Classes

Regrettably, Dumbrigue failed to comply with the court's order.  As it stated it would, the court entered an order on April 6, 2011, implementing the additional sanctions.  Dumbrigue was barred from filing any new bankruptcy cases in the United States Bankruptcy Court, District of Nevada until such time as he complied with the court's previous order requiring him to complete continuing legal education classes.  Furthermore, the court barred Dumbrigue from filing new cases for an additional three months as a penalty for his noncompliance, such penalty period to begin once he filed the required proof of completion.  The order also provided Dumbrigue an opportunity to seek relief from the penalty period upon a sufficient showing of mitigating circumstances.  The order did not affect Dumbrigue's ability to use the court's Case Management and Electronic Filing System ("ECF") to file documents in other cases he filed prior to the order's entry.

4

*B.  The Smith Case*

Notwithstanding the court's April 6, 2011 order barring him from filing new cases, Dumbrigue filed a voluntary petition on behalf of Jessie Lynne Smith ("Smith") on April 27, 2011. The petition was filed using Dumbrigue's ECF credentials and thus he was listed as Smith's attorney of record.[4]  However, attorney Eric P. Roy's ("Roy") electronic signature appeared on the filed petition.[5]  There was no explanation for this discrepancy filed with the petition.

Because the petition had been filed using Dumbrigue's ECF credentials during a time when he was barred from filing new bankruptcy cases, the court ordered both Dumbrigue and Roy to appear and explain the circumstances leading up to, and culminating in, the filing of the bankruptcy petition.  This order to show cause was entered on May 2, 2011 and required Dumbrigue and Roy to each respond by May 9, 2011.  Specifically, Dumbrigue and Roy were to explain why each should not be held in contempt of court for violating an order of this court and why the conduct of each in

---

[4]Local Rule 5005(b) states:

(b) **Signature**. The user log-in and password that are required to submit documents to the Electronic Filing System serve as the filing user's (as that term is defined in LR 2002(a)(3)) signature on all electronic documents filed with the court. The user log-in and password may not be used as an accommodation for any other party. They also serve as a signature for purposes of Fed. R. Bankr. P. 9011, the other Federal Rules of Bankruptcy Procedure, the Local Rules of this court, and any other purpose for which a signature is required in connection with proceedings before the court.

[5]An "electronic signature" for purposes of this opinion consists of the manual typing of "/s/" before the printed name of the signatory in order to allow the document to be electronically filed in the court's ECF system.  As stated in Local Rule 9004(c)(1)(C):

The use of "/s/Name" or a software generated electronic signature on documents constitutes the filing user's representation that an originally signed copy of the document exists or that the electronic signature has been authorized, and is in the filing user's possession at the time of filing.

Roy's electronic signature appeared on Smith's voluntary petition three times: on Exhibit B of the voluntary petition (pg. 2), on the Signatures page (pg. 3), and on the Disclosure of Compensation of Attorney for Debtor form.

1  filing the petition was not for an improper purpose within the meaning of Rule 9011(b)(1).

2  **1. Dumbrigue and Roy Respond to the Order to Show Cause After the May 9, 2011 Deadline**

3  a. Dumbrigue Responds on May 18, 2011

4  Dumbrigue responded to the court's order to show cause through counsel on May 18, 2011,

5  in the form of a declaration.  This declaration stated that from November 8, 2011 until March 31,

6  2011, he actively and diligently searched for continuing legal education classes but was unable to

7  find any such classes.[6]  Seeking to comply with the court's order, he contacted Jay G. Foonberg, a

8  nationally-know provider of CLE course on law practice management, prior to the March 31, 2011

9  deadline, but the earliest that Mr. Foonberg could provide the required course was after the

10  deadline.  Although it was late, Dumbrigue stated that he paid for and completed the course on

11  April 3, 2011; the course cost $3,450.  Dumbrigue stated that this course substantially complied

12  with the court's order, even though he completed the course work late, because he obtained one-on-

13  one assistance at great personal expense.  Notably, Dumbrigue's response does not explain why, if

14  he completed the CLE requirement so close in time to the March 31, 2011 deadline, he did not file

15  proof of completion of the courses until almost six weeks later, on  May 20, 2011, after the court

16  had issued its order to show cause.

17  With regard to Smith, Dumbrigue stated that she had approached him prior to the entry of

18  

19  [6]It seems that Dumbrigue may have misunderstood the court's order requiring him to complete

20  continuing legal education classes.  He claims that he searched for "a six-hour, live in-person continuing Legal Education course on Time Management or Case Management . . . in Nevada."  By

21  its terms, the order required Dumbrigue to complete six hours of course work *in the aggregate*.  Of the six required hours, only three were required to have time management or case management as their

22  subject.  Furthermore, the requirement did not require that all of the six hours be completed during one class, only that six hours be taken in the aggregate.

23  The court conducted a limited review of CLE classes that would have complied with the stated

24  requirements prior to ordering Dumbrigue to take the CLE classes.  It again reviewed the classes that had been offered during the time period.  From this review, the court has no doubt that Dumbrigue

25  could have complied with the court's order had he made a good faith effort to do so.

26

the order barring him from filing new bankruptcy cases.  Dumbrigue claims he sought another attorney to file Smith's case on his behalf because he was aware of the order barring him from filing cases.  He was unsuccessful.  Dumbrigue then claimed that Roy gave him permission to use his signature to file Smith's bankruptcy petition.  According to Dumbrigue, after discussions with Roy, he used Roy's electronic signature on the petition when he uploaded it to the ECF system.

b. <u>Roy's May 20, 2011 Response</u>

Roy filed a response to the order to show cause on May 20, 2011.  Roy's account of the events in question materially contradicted Dumbrigue's.  Roy claimed that he did not receive notice of the court's order to show cause until Dumbrigue brought him a copy of it on May 17, 2011, and used this late receipt to justify his late response.[7]  Roy claimed that Dumbrigue was an acquaintance who sought his assistance in mid-April regarding Dumbrigue's prohibition on filing new cases.  Roy also claims he insisted on seeing the order that had been entered against Dumbrigue before he would agree to anything.  According to Roy, Dumbrigue promised to return the next day with a copy of the order – he had not brought it with him to the meeting with Roy – but Dumbrigue never returned.  Roy related that the conversation continued and centered on Roy's main interest: Dumbrigue possibly joining Roy's firm and filing future bankruptcy cases under Roy's supervision.  Roy claims that the main subject of their conversation was this long-term arrangement, not any permission for Dumbrigue to use Roy's name for the purpose of filing Smith's bankruptcy petition.

Roy stated that the next time he saw Dumbrigue was on May 17, when Dumbrigue came to

---

[7]Roy stated that he had changed offices many months before the order was issued, and that the court had sent the order to show cause to his old address.  But the court sent the order to show cause to Roy at the address associated with his ECF account which is official address for attorneys admitted to practice before this court.  It is the attorney's responsibility to keep the ECF records up to date, Local Rule 5005(d), and thus Roy's explanation does not excuse his failure to timely respond to the court's order to show cause.

Roy's office and showed him a copy of the order to show cause. Roy maintained that he was utterly unfamiliar with the facts and circumstances giving rise to the court's order to show cause. He claimed that he had never met Smith and received no compensation for representing her. He stated that he was unaware that any bankruptcy had been filed with him listed as the attorney on the bankruptcy petition. Roy claimed that he did not intend to circumvent any court order. He stated that reviewing the court's order barring Dumbrigue was a condition precedent to any agreement to work with Dumbrigue. As Dumbrigue had never provided a copy of the order, Roy had not worked on any bankruptcy related matters with Dumbrigue.[8]

## 2. The Hearing on the Order to Show Cause

Both Roy and Dumbrigue entered appearances through their attorneys at the hearing on the court's order to show cause on May 25, 2011. Despite the fact that the order to show cause made it clear that Dumbrigue would be required to prove, through admissible evidence, that he had complied with the April 6, 2011 order, Dumbrigue's attorney was unprepared to put on evidence or to call Dumbrigue as a witness.[9] Dumbrigue's attorney requested a continuance so that he could prepare to examine Dumbrigue and to cross-examine Roy. Because of the serious nature of

---

[8]In his response to the court's order to show cause, Roy requested that any sanctions levied against Dumbrigue also include the legal fees Roy incurred in retaining counsel to assist him with responding to the court's order to show cause and appearing at the hearing. The court denies this request. As discussed below, the court concludes that Roy was not in contempt of court and did not violate Rule 9011. However, had Roy's ECF address been correct, he would have timely received the court's order to show cause and could have avoided most of these expenses. Additionally, if Roy has any failing in this matter, it is that he was not explicit enough in voicing his disapproval to the arrangement that Dumbrigue was seeking. Even when testifying at the show cause hearing, Roy was equivocal when it came to the issue of whether Dumbrigue should be sanctioned for his conduct, stating that he did not want to get anybody in trouble.

[9]In addition to requiring Dumbrigue to show cause as to why he was not in contempt of court and why he had not violated Rule 9011, the order to show cause also required Dumbrigue to refund all fees Smith paid Dumbrigue and to find Smith competent replacement counsel.

Dumbrigue's potential violation and the serious sanctions he potentially faced as a result, the court continued the hearing to June 6, 2011 to accommodate Dumbrigue. The court also instructed Dumbrigue to produce the original signed petition at the continued hearing.

a. <u>Dumbrigue's Testimony</u>

At the June 6 hearing, Dumbrigue testified that he knew he was barred from filing any new cases because he had failed to comply with court orders. Dumbrigue further testified that he met with Roy because he desperately needed someone's help to file Smith's bankruptcy petition; he needed help so that Ms. Smith would be protected under the Bankruptcy Code. While Dumbrigue claimed he obtained Roy's permission to file the Smith petition during the mid-April conversation between the two of them, he testified that Roy may not have arrived at the same understanding. Dumbrigue, however, nonetheless maintained that, in his mind, there was no doubt he had Roy's permission to file the Smith petition.

Dumbrigue also produced Smith's original bankruptcy petition. The petition bears Dumbrigue's, not Roy's manual signature. Dumbrigue testified that he filed Smith's petition himself, using his own ECF log-in credentials but Roy's electronic signature.

b. <u>Roy's Testimony</u>

Roy testified that the subject of the mid-April conversation with Dumbrigue centered on the possibility of the two of them working together on unspecified, future cases. Roy also testified that Dumbrigue wanted help filing bankruptcies because he was having issues with the court, and was then temporarily barred from filing new cases. According to Roy, he was only interested in a long-term business arrangement with Dumbrigue; he was not concerned about anything within the three-month period during which Dumbrigue told Roy he was prohibited from filing cases. Roy testified that the conversation ended with the expectation that he and Dumbrigue would continue to discuss the possibility of working together and that Dumbrigue would return with a copy of the order

9

1  barring him from filing new cases.

2      When Dumbrigue did not return with a copy of the order as he said he would, Roy stated

3  that he tried calling Dumbrigue several times, but his calls went unanswered.  During the time

4  between their mid-April conversation and May 17th, when Dumbrigue returned to Roy's office with

5  a copy of the court's order to show cause, Roy had not heard from Dumbrigue at all.

6  ## II.  CREDIBILITY OF DUMBRIGUE AND ROY

7      Dumbrigue's and Roy's accounts of the events leading up to this opinion materially

8  contradicted each other.  Dumbrigue claimed he had Roy's permission to file the Smith petition

9  while Roy maintained he had not authorized the filing.

10      While the dealings between the two attorneys were somewhat equivocal, the court finds that

11  Roy's testimony is the more credible.  That is, the court believes that he never gave express

12  permission to use his name in any way with respect to Smith's bankruptcy petition.  Dumbrigue's

13  testimony to the contrary is false.

14      Not only did Roy present as the better witness, but his version of the meeting is by far the

15  more credible.  As a consequence, the court finds that Roy has done nothing wrong.  His only error

16  was to associate with Dumbrigue in the first place, an error that is harmless on these facts.

17      The court cannot say the same for Dumbrigue.  Dumbrigue would have the court believe that

18  a lawyer agreed to have another use his name with respect to a bankruptcy petition when that lawyer

19  had never met the client and had never reviewed the client's file or papers.  In short, Dumbrigue

20  wishes to cover his own incompetence and unethical behavior by having the court believe that other

21  attorneys are similarly incompetent and unethical.  Moreover, even on Dumbrigue's account, he

22  never followed up, and he never sent any of Smith's files to Roy.  In short, Dumbrigue found what

23  he thought was a escape hatch from the court's order barring his filing of new cases, and he jumped

24  through it without a care about the consequences.

25

26

### III.  DUMBRIGUE'S CONTEMPT OF COURT AND VIOLATION OF RULE 9011

#### A.  Civil Contempt of Court for Noncompliance with Court Order

Bankruptcy courts have the power to impose civil contempt.  *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284–85 (9th Cir. 1996); *Stasz v. Gonzalez (In re Stasz*, 387 B.R. 271, 276 (B.A.P. 9th Cir. 2008); *see also* 11 U.S.C. § 105(a).  In order to hold a  party  in contempt, the bankruptcy court must find that the  party "'violated a specific and definite order of the court.'"  *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003) (citing *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)).  Substantial compliance with the court order is a defense to civil contempt.  *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982).  "Technical or inadvertent violations of the order" are not fatal to a substantial compliance defense where the party "has taken 'all reasonable steps' to comply with the court order . . . ."  *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986).

On April 6, 2011, the court entered an order barring Dumbrigue from filing new cases.  It was a detailed order.  Dumbrigue intentionally attempted to evade it.  He used his own ECF log-in credentials to file Smith's petition, and he attempted to hide this by placing Roy's electronic signature on the petition, in essence forging Roy's name.  He apparently hoped that the appearance of Roy's name on the petition would fool the court into thinking he complied with the court's prior order.  It didn't.

It is clear from his testimony that Dumbrigue understood the content of the order at all relevant times.  In fact, his actions show that he was aware of its effect: he sought the help of another attorney to file Smith's petition because he knew he was barred from filing new cases.  In short, he knew the prohibitions in the April 6 order, yet he still filed Smith's petition.  He violated

the terms of a clear order of which he knew the contents.  He is in contempt of court.[10]

*B.  The Requirements of Rule 9011*

His actions also violate Rule 9011.  Rule 9011 addresses representations made by all who file or appear in bankruptcy court.

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
> (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR. P. 9011(b).

A bankruptcy court may independently consider violations of Rule 9011.  *See* FED. R. BANKR. P. 9011(c)(1)(B) ("On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.").

The court measures the conduct of attorneys who appear before it "objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court."  *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.*), 922 F.2d 1438, 1441 (9th Cir. 1991); *see also G.C. & K.B. Inv., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003); *Winterton v. Humitech of Northern California, LLC (In re Blue Pine, LLC)*, __ B.R. __, ___ 2011 WL 4482127, at *8 (B.A.P. 9th Cir. Aug. 22, 2011); *In re Sanford*, 403 B.R. 831, 841 (Bankr. D.

---

[10]The substantial compliance defense is unavailable to Dumbrigue.  First, he did not "take[] 'all reasonable steps' to comply with the court order."  *See infra* Section III.C.  Second, his filing of the Smith petition goes beyond a "technical or inadvertent violation[] of the order."

Nev. 2009).  As a consequence, an attorney may act negligently and still violate Rule 9011, as a finding of "[s]ubjective bad faith is not necessary; the attorney must only fail to meet" the objective standard set forth in Rule 9011.  *Sanford*, 403 B.R. at 841 (citing *Smyth v. City of Oakland* (*In re Brooks-Hamilton*), 329 B.R. 270, 283 (B.A.P. 9th Cir. 2005), *aff'd in part, rev'd in part on other grounds, and remanded*, 271 F.App'x 654 (9th Cir. 2008) (per curiam) (in turn citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990))).

While subdivision (b) of Rule 9011 provides the required standard, subdivision (c) governs the nature of sanctions imposed.  Sanctions under Rule 9011 are to be deterrent in nature.  *Brooks-Hamilton*, 329 B.R. at 283.  Indeed, the text of Rule 9011 requires that the sanction imposed by a court "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  FED. R. BANKR. P. 9011(c)(2).  A court imposing sanctions under Rule 9011, however, "has wide discretion in determining what sanction" should properly be imposed.  *Brooks-Hamilton*, 329 B.R. at 283 (citing *Kowalski-Schmidt v. Forsch* (*In re Giordano*), 212 B.R. 617, 622 (B.A.P. 9th Cir. 1997), *aff'd in part, rev'd in part on other grounds*, 202 F.3d 277 (9th Cir. 1999) (unpublished table decision)).[11]

*C.  Dumbrigue's Violation of Rule 9011*

Dumbrigue violated Rule 9011's requirement that a petition "not be[] presented for any improper purpose" when he filed the Smith petition.  Dumbrigue filed the petition to circumvent a

---

[11]Despite the permissive language of the rule, *see* FED. R. BANKR. P. 9011(c) ("the court *may* . . . impose an appropriate sanction) (emphasis added), once a court determines that a violation of Rule 9011 has occurred, the court must impose sanctions.  *In re Chisum*, 847 F.2d 597, 599 (9th Cir. 1988) (holding that when Rule 9011 "is violated, the imposition of sanctions is mandatory, not discretionary"); *see also Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).  Thus, while the court has discretion to determine the specific sanction to be imposed as discussed above, it does not have discretion to decline to impose some form of sanction once it has determined that sanctionable conduct has occurred.

13

court order that barred him from filing new cases.  Rather than making a good faith effort to comply

with the order, Dumbrigue took affirmative steps to maneuver around it.  Dumbrigue sought Roy's

help to complete the filing.  Dumbrigue signed the electronic copy of the petition with Roy's

electronic signature even though Dumbrigue used his own ECF log-in credentials to upload the

petition.  Such use of his own ECF log-in information constituted a signature and affirmation that

Dumbrigue filed the case and that he would act as Ms. Smith's attorney.[12]  Local Rule 5005(b)

("The user log-in and password that are required to submit documents on the Electronic Filing

System serve as the filing user's . . . signature on all electronic documents filed with the court. . .

.They also serve as a signature for purposes of Fed. R. Bankr. P. 9011, . . . .").

Dumbrigue claimed that he filed the Smith petition to help his client.  However, Dumbrigue

could have accomplished this goal through other, proper, means.  He could have helped Ms. Smith

obtain replacement counsel.  He could have been honest with his client: he could have explained to

Ms. Smith that he could no longer file her petition because he was barred from so doing.  He could

have, although the court does not make any determination as to whether such a request would have

been successful, sought relief from the court to complete the Smith filing.  He could have even

prevented this situation altogether: he could have complied with the court's order requiring him to

take CLE courses.  In short, Dumbrigue's arguments here are unconvincing.  Although Dumbrigue

may have thought that he had no other options, he could have helped Ms. Smith in a manner

consistent with the court's order barring him from filing new cases and his obligations under Rule

9011.

Measured against what Rule 9011 requires, Dumbrigue's conduct falls short.  A reasonably

competent attorney admitted to practice before the court would not have engaged in Dumbrigue's

---

[12]Whether Dumbrigue had Roy's permission to use Roy's electronic signature is thus immaterial.

14

conduct.  Unlike Dumbrigue, any competent attorney would have either complied with the court's

order, sought relief from that order, or pursued another proper alternative.  Even if any such

attorney declined to pursue any of these alternatives, however, the attorney would not have, as

Dumbrigue did here, disregarded the court's order entirely.

<u>IV.  SANCTIONS IMPOSED</u>

As discussed above, the purpose of Rule 9011 is to deter repetition of an attorney's

sanctionable conduct or comparable conduct by others similarly situated.[13]  FED. R. BANKR. P.

9011(C)(2).

To further this purpose, the court sanctions Dumbrigue as follows (taking into account that

he has already refunded moneys paid to him by the debtor in this case):

(1)    Dumbrigue, the Dumbrigue Law Firm, and any attorney associated with Dumbrigue

are hereby barred from filing any new bankruptcy case in the United States District

Court, District of Nevada.  Dumbrigue may continue to represent clients whose

bankruptcy cases have already been filed.  But Dumbrigue may not file a bankruptcy

case for any client whose case is not filed as of the date of this opinion. As to these

clients, Dumbrigue must transfer representation to another attorney, and must refund

all fees collected to the client (or must transfer an amount equal to such fees to the

attorney who will represent the client).  After one year has passed from the date of

---

[13]The court is cognizant of the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards").  The court has considered these standards, especially those relating to aggravating and mitigating factors, to the extent they apply.  However, because it is within the court's sound discretion to impose sanctions, the court declines to "slavishly intone[]" the ABA Standards in situations where they are of limited utility.  *Brooks-Hamilton,* 400 B.R. 238, 255 (B.A.P. 2009) (Markell, J. concurring).  The Ninth Circuit Bankruptcy Appellate Panel recently acknowledged that the ABA Standards are "a helpful guide;" but the court is not required to apply them, as this would be "inconsistent with the discretion needed for a bankruptcy court to remedy attorney misconduct . . . ." *In re Nguyen*, 447 B.R. 268, 277 (B.A.P. 9th Cir. 2011).

this opinion, Dumbrigue may petition the court for reinstatement, at which time the court may impose additional limitations necessary to protect the public.

(2)    The court will refer this matter to the State Bar of Nevada so that it may determine whether this case warrants further disciplinary proceedings.

(3)    The court will refer this matter to the United States Attorney General for the District of Nevada.[14]

## V. CONCLUSION

Attorneys must conform their conduct to the requirements of Rule 9011. Dumbrigue's conduct in this matter fell well below those standards. Accordingly, this court must sanction Dumbrigue for his conduct. This court has exercised its discretion with thought and care to impose sanctions intended to further Rule 9011's purpose: to deter repetition of an attorney's sanctionable conduct and comparable conduct by others similarly situated. It is the enduring hope of the court that through vigilant enforcement of Rule 9011, attorneys will comport themselves in a manner consistent with the Bankruptcy Rules, the Bankruptcy Code, and the Rules of Professional Conduct.

This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052,

---

[14]This referral is necessary to carry out any consequences for Dumbrigue's contempt of court. In *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992), the Ninth Circuit explained:

> Whether contempt is criminal or coercive civil is determined by the purpose of the sanction. If the sanction is intended to punish past conduct, and is imposed for a definite amount or period without regard to the contemnor's future conduct, it is criminal. If the sanction is intended to coerce the contemnor to comply with the court's orders in the future, and the sanction is conditioned upon continued noncompliance, it is civil.

As there is no practical way in which Dumbrigue can cure his violation, any action taken against him with respect to that violation would be designed to punish past conduct. In such cases, the remedy is not civil, but criminal. *See also Oliner v. Kontrabecki*, 305 B.R. 510, 522 (N.D. Cal. 2004). As this court has no criminal contempt jurisdiction, a referral to the United States attorney is the only practical way in which the situation can be remedied.

made applicable here by Rule 9014(c).

The court here ORDERS Gwynne R. Dumbrigue SANCTIONED as set forth above.

Copies sent to:
CM/ECF ELECTRONIC NOTICING
BNC MAILING MATRIX

# # #